IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Tireboots by Universal Canvas, Inc., Plaintiff, | ) ) ) | Case No. |
| v. | ) ) ) ) | COMPLAINT FOR TRADEMARK INFRINGEMENT |
| TireSocks, Inc., Tiresocks International, Inc, and Jarrett Gordon, an individual Defendants. | ) ) ) ) ) ) | Jury Demand |

### Complaint

Plaintiff, Tireboots by Universal Canvas, Inc., by and through their counsel, Hibbs Law, LLC, brings the present action against Defendants, TireSocks, Inc., Tiresocks International, Inc., and Jarrett Gordan, an individual, and alleges as follows:

### Parties

1. Plaintiff, TIREBOOTS BY UNIVERSAL CANVAS, INC. ("Universal Canvas"), is an Illinois corporation, and a family-owned business, with offices and principal place of business at 195 Kehoe Blvd, #7, Carol Stream, Illinois 60188.

2. Plaintiff was established as Universal Canvas, Inc. in or around the end of 2003. Plaintiff has used the mark "UNIVERSAL CANVAS" continuously since that date.

3. Plaintiff operated as a sole proprietor with Universal Canvas as a D/B/A until 2007, and incorporated as Universal Canvas, Inc. on 29 November 2007. *See, Exhibit A.*

4. Universal Canvas, Inc., was involuntarily dissolved on 09 April 2010. *See, Exhibit A.*

5. Plaintiff continued to operate as a D/B/A until Plaintiff incorporated again as Tireboots by Universal Canvas, Inc., on 21 September 2016 *See, Exhibits B and C.*

6. Plaintiff specializes in manufacturing and selling high quality, durable, dependable, and superior commercial equipment covers under product brands like Tireboots, Aerial Lift Diapers, and Control Box Covers. These covers are on mobile construction equipment and aerial mechanical, electrical, and hydraulic lifts by customers to keep their warehouses and indoor spaces clean.

7. Defendant, TireSocks, Inc. is a Colorado corporation, incorporated on 01 November 2005, with its principal place of business located at 8640 S. Peoria St., Ste. 200, Englewood, CO 80112. *See, Exhibit D.*

8. Defendant Tiresocks International, Inc., is a Colorado corporation, incorporated on 10 October 2016, with a principal place of business located at 8640 S. Peoria St., Ste. 200, Englewood, CO 80112. *See, Exhibit E.*

9. Defendant Jarrett Gordan is the owner and registered agent for both Tiresocks, Inc. and Tiresocks International, Inc., and the owner of the trade name registration for "TIRESOCKS". *See, Exhibits E and F.*

10. Defendant TireSocks, Inc. also owned the trade name "TIRESOCKS" in Colorado from 01 January 2005 to 01 February 2008. *See, Exhibit F.*

11. The Defendants ("TireSocks") also produce and sell covers for indoor commercial and construction equipment, and are a direct competitor of the Plaintiff.

## Jurisdiction and Venue

12. This court has original subject matter jurisdiction over the claims in this action pursuant to provisions of 15 U.S.C. §§ 1051-1129; 28 U.S.C. § 1338(a) and (b); and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13. This court has personal jurisdiction over the Defendant as it continuously and systematically sells products related to the construction industry, including to corporate consumers and individual citizen consumers of the state of Illinois, through direct sales and through numerous dealerships located within the state of Illinois. *See, Exhibit G.*

14. Upon information and belief, Defendant has intentionally misappropriated Plaintiff's federally registered "UNIVERSAL CANVAS" trademark and has adopted Plaintiff's mark as a domain name for the express purpose of targeting Plaintiff's consumers, including consumers based in Illinois.

15. Defendants actions harm Plaintiff's business in Illinois under the Illinois Long Arm Statute 735 ILCS 5/2-209(a).

16. Venue is proper in this court pursuant to 28 U.S.C. § 1391(c) because, upon information and belief, all parties to this action do business in this district. And a substantial part of the events giving rise to the subject claims arose in this district.

<u>Plaintiff and Plaintiff's Trademarks</u>

17. Plaintiff, Tireboots by Universal Canvas, Inc. is owned and operated by Charles Tunk with its principal place of business in Carol Stream, Illinois.

18. Mr. Charles Tunk is the founder, Chief Executive Officer and the Chief Financial Officer of Universal and Ms. Lindsey Tunk, his daughter is the Regional Manager for the Plaintiff. Both Charles Tunk and Lindsey Tunk manage the Plaintiff's business on a day-to-day basis.

19. Plaintiff is the owner of the "UNIVERSAL CANVAS" trademark with Registration No. 5231317 ("'317") for the following goods and services: "Fitted canvas tire covers for mobile construction equipment and aerial mechanical, electrical, and hydraulic lifts." The

registration is to the word mark, in its entirety, exclusive of any particular font, style, size, or color. *See, Exhibit H.*

20. Universal Canvas has continuously been in business since 2003, first as Charles Tunk A/K/A Universal Canvas, then as Universal Canvas, Inc. (2007-2010), then as Charles Tunk D/B/A Universal Canvas, Inc., and as Tireboots by Universal Canvas since 2016. Since its inception, Universal made high quality, industrial strength construction products like commercial equipment covers for indoor warehouse machines.

21. Plaintiff's goods include commercial equipment covers for various types of equipment like warehouse forklifts, telehandlers, boom lifts, and scissor lifts. Their product brands include Tireboots, Aerial Lift Diapers, and Control Box Covers. They also use the descriptive term "Safety Pads" for another product line.

22. Universal Canvas has continuously used the house brand "UNIVERSAL CANVAS" since 2003.

23. As early as January of 2004, Plaintiff began use of the house mark "UNIVERSAL CANVAS", as the source of origin for their fitted canvas tire cover goods.

24. Initially, Plaintiff utilized printed catalogs and phone orders, but also desired to use online means to sell their products to customers.

25. Potential customers access Plaintiff's catalog of goods bearing the "UNIVERSAL CANVAS" trademark via its website, www.universalcanvasinc.com, and use the information contained on the website to place orders for Plaintiff's goods.

26. Plaintiff changed their name to Tireboots by Universal Canvas, Inc. in 2016. *See, Exhibit C.*

27. Since its founding in 2003, Plaintiff has utilized various marketing and advertising means to reach potential consumers. Plaintiff spends about $10,000 - $15,000, on average, per year to

advertise their products. The different types of marketing methods used by the Plaintiff include various promotional items like, promotional bags, business cards, promotional key promotional chains, promotional pens, promotional torch lights, promotional highlighters, promotional clothing accessories; promotional bottle sleeves, post cards; banners; and advertising catalogs. Plaintiff also spends their marketing budget on advertising in various trade shows, and magazines. *See, Exhibit I.*

28. Plaintiff's growth percentage of their yearly sales, under the umbrellas of Universal Canvas, Inc., and Charles Tunk D/B/A Universal Canvas, Inc., from 2008 to 2015 are as follows: 39.34% of growth in yearly gross sales in 2008, 13.24% of growth in yearly gross sales in 2009, 29.19% of growth in yearly gross sales in 2010, 26.66% of growth in yearly gross sales in 2011, -1.94% of loss in yearly gross sales in 2012, 13.67% of growth in yearly gross sales in 2012, 7.84% of growth in yearly gross sales in 2013, 10.44% of growth in yearly gross sales in 2014, 8.02% of growth in yearly gross sales in 2016 (name changed in September), 34.56% of growth in yearly gross sales in 2017 (name change complete).

29. Plaintiff's growth percentage of their yearly sales, under the umbrella of Tireboots by Universal Canvas, Inc., from 2017 to 2019 are as follows: 1263% of growth in yearly gross sales in 2017, 243% of growth in yearly gross sales in 2018, and 26.15% of growth in yearly gross sales in 2019.

Defendants and Defendants' Trademark Use

30. On information and belief, Defendant, TireSocks, Inc. is a Colorado corporation, incorporated on 01 November 2005, with its principal place of business located at 8640 S. Peoria St., Ste. 200, Englewood, CO 80112. *See, Exhibit F.*

31. On information and belief, Defendant, TireSocks, Inc., is operated principally by Jarrett Gordon, Patti Reichert, and Kali Peterson, who on information and belief have personal knowledge of the infringing ad deceptive acts that lead to this suit.

32. On information and belief, Defendant TireSocks International, Inc. is a Colorado corporation, incorporated on 10 October 2016, with its principal place of business located at 8640 S. Peoria St., Ste. 200, Englewood, CO 80112. *See, Exhibit E.*

33. On information and belief, Defendant Jarrett Gordan is the registered agent for both Tiresocks, Inc. and Tiresocks International, Inc., and the owner of the trade name registration for "TIRESOCKS". *See, Exhibits D, E, and F.*

34. Defendants manufacture and sell commercial equipment covers used on mobile construction equipment and aerial mechanical, electrical, and hydraulic lifts by customers to keep their warehouses and indoor spaces clean.

35. On information and belief, TireSocks, Inc. uses "tiresocks.com" domain to market its goods with marks like "TireSocks", "DripDiapers", "AerialShields", "SafetyPads", "AerialJackets", "ForkSocks", "TrackSocks", and "CasterSocks" and continues to maintain these brands for its goods and services.

36. Defendant, TireSocks, Inc. owns the following trademark registrations: AERIALSHIELDS (Reg. No. 6080034), SAFETYPADS (Reg. No. 5609847), AERIALJACKETS (Reg. No. 5565021), TIRESOCKS, INC (Reg. No. 5496357), TS (Reg. No. 5378565), FORKSOCKS (Reg. No. 5328163), CASTERSOCKS (Reg. No. 5328162), TRACKSOCKS (Reg. No. 5328160), TIRESOCKS (Reg. No. 4595231), DRIPDIAPERS (Reg. No. 4375596). *See, Exhibit J.*

37. The goods and services for each of the Defendant's registered marks are as follows:

    a. DRIPDIAPERS (Reg. No. 4375596), filed 30Nov12, for IC027 Absorbent pads for the containment of fluid leaks, namely, disposable floor pads.

    b. TIRESOCKS (Reg. No. 4595231), filed 30Nov12, for IC012 Fitted Covers for tires.

    c. TRACKSOCKS (Reg. No. 5328160), filed 27Mar17, for IC017 Covers for industrial equipment and machinery.

    d. CASTERSOCKS (Reg. No. 5328162), filed 27Mar17, for IC017 Covers for industrial equipment and machinery.

    e. FORKSOCKS (Reg. No. 5328163), filed 27Mar17, for IC017 Covers for industrial equipment and machinery.

    f. TS (Reg. No. 5378565), filed 06Jun17, for IC035 retail store, online retail store and wholesale store services in the field of surface protection and safety products.

    g. TIRESOCKS, INC (Reg. No. 5496357), filed 19Oct17, for IC035 Wholesale distributorships featuring retail and wholesale sales of surface protection and safety products.

    h. SAFETYPADS (Reg. No. 5609847), filed 19Oct17, for IC017 Protective insulation covers for industrial machinery.

    i. AERIALJACKETS (Reg. No. 5565021), filed 29Jan18, for IC007 Fitted protective covers for industrial construction equipment and machinery.

    j. AERIALSHIELDS (Reg. No. 6080034), filed 22Nov 19, for IC 007 Fitted protective covers for industrial construction equipment and machinery. *See, Exhibit K.*

38. On information and belief, Defendants do not legitimately use or have the right to use the UNIVERSAL CANVAS trademark in relation to their goods and services.

39. On information and belief, Defendant, TireSocks, Inc. utilizes its registered domains to market and sell its products to consumers nationwide, including consumers located in Illinois.

40. Defendant, TireSocks, Inc. sent a cease-and-desist letter, containing unsupported allegations, to the Plaintiff on 15 April 2020. *See, Exhibit L.*

41. Plaintiff responded to the Defendant's cease-and-desist letter on 07 September 2020 disproving all of the Defendants allegations and counter-claiming with the domain name issue and infringement by Defendants. *See, Exhibit M.*

Other Marks in the Industry

42. The equipment cover industry is competitive between a small pool of competitors that use closely related, but distinct marks to describe their products.

43. For example, another competitor in the industry, Elizabeth Martin, D/B/A Tirebooties.com, uses similar trademarks for similar products. *See, Exhibit N.* For example, they use a registered trademark "Tirebooties" (Reg. No. 3670412) for covers that encase indoor warehouse equipment. *See, Exhibit K* and *Exhibit O.* Similarly, they sell covers for aerial lifts under the common law trademark of "RiggDiapers" and covers for casters under the common law trademark of "CasterBooties." *See, Exhibit P.*

Infringing Actions and Facts of the Case

44. On information and belief, Defendants have been aware of Universal Canvas and its products since late 2003 – early 2004.

45. As early as 2006, Plaintiff attempted to register its first "UNIVERSAL CANVAS" domain but found the domain name "universalcanvas.com" already registered by a party unaffiliated with Plaintiff. Plaintiff registered the domain name "universalcanvasinc.com". *See, Exhibit*

Q. It is believed that Defendants purchased the Universalcanvasinc.com domain for fraudulent purposes.

46. On information and belief, around January 2011, Defendant TireSocks, Inc. began redirecting www.universalcanvas.com to its own domain, (https://www.tiresocks.com), for the sole purpose of misrepresenting themselves as Universal Canvas to capture Plaintiff's existing and potential consumers. *See Exhibit R.*

47. On information and belief, Defendant, TireSocks, Inc. utilizes its registered domains to market and sell its products to consumers nationwide, including consumers located in Illinois.

48. On information and belief, Plaintiff saw a significant dip in their sales when Defendant intentionally began redirecting website traffic from www.universalcanvas.com to https://www.tiresocks.com.

49. On information and belief, Plaintiff saw a significant dip in their sales until they changed their name from Universal Canvas, Inc., to Tireboots by Universal Canvas, Inc. This is because www.universalcanvas.com was the first result in a Google® search for a period of time in 2011. During this time, all Google® searches for Universal Canvas took existing and potential customers to the Defendant's website. This continued until the Plaintiff switched their name to Tireboots by Universal Canvas, Inc. When the Plaintiff switched their name, Google® put Plaintiff's company, Tireboots by Universal Canvas, Inc., before the Defendants misrepresenting domain, allowing potential customers to find Universal Canvas again.

50. Upon information and belief, Defendant, TireSocks, Inc. has never used "UNIVERSAL CANVAS" or does not presently use "UNIVERSAL CANVAS" as a legitimate trademark, a trade name, or a designation of the origin of its goods.

51. In August 2016, Plaintiff was contacted by a former customer of theirs, claiming that they had attempted to contact Universal Canvas but had been redirected to the Defendant, TireSocks, Inc.'s website.

52. Plaintiff was deeply troubled to learn that the Universal Canvas domain was being redirected and was concerned that TireSocks was intentionally misrepresenting itself as Universal Canvas.

53. Plaintiff asked a potential consumer to enter into an email exchange with the Defendant TireSockswhere they inquired into the Defendant's affiliation with Universal Canvas. *See, Exhibit S*. The Defendant's representative, despite knowing that the customer was looking to order from Universal Canvas, intentionally misrepresented themselves. *See, Exhibit S*.

54. Following the customer complaints and the blatant misrepresentation, Plaintiff sent three pro se cease and desist letters ("Letters") to the Defendant requesting that it cease use of its "UNIVERSAL CANVAS" mark and cease redirecting the universalcanvas.com domain to tiresocks.com. These Letters were sent on 01 June 2016, 05 July 2016, and 04 August 2016. *See, Exhibit T*. The Letters requested a response from the Defendant within one (1) month following the date of the letter. Defendant never responded to the Letters.

55. Plaintiff filed pro se for the word mark "UNIVERSAL CANVAS" on 25 August 2016. The application listed a date of 12 January 2004 for the mark's first use and first use in commerce. The examiner requested further examples of use in commerce, but lack of distinctiveness issue was not raised. On 17 April 2017, the mark was published for opposition, and no

challenges were raised. On 27 June 2017, the mark was issued, with the sole disclaimer that "no claim is made to the exclusive right to use "canvas" apart from the mark as shown".

56. On information and belief, Defendant, TireSocks, Inc., suddenly ceased redirecting internet traffic from the universalcanvas.com domain around August 2020, prompted by the Plaintiff's 15 April 2020 response to Defendants' cease-and-desist.

57. Plaintiff was forced to retain an Intellectual Property attorney when they received Defendants' baseless, harassing 15 April 2020 cease and desist letter. It was at this time that Plaintiff learned of their rights and that the domain misrepresentation was actionable.

58. On information and belief, Plaintiff lost potential clients and business contracts due to the intentional acts of the Defendant that has amounted to serious losses.

Count I: Infringement of Registered Trademark

15 U.S.C. § 1114(a)

59. Plaintiff owns registered trademark "UNIVERSAL CANVAS" which, under section 33 of the Lanham Act (15 U.S.C. § 1115), creates prima facie evidence of validity of the registered mark, the registration, ownership, and exclusive rights.

60. Defendants' used the "UNIVERSAL CANVAS" mark in its registered domain name, www.universalcanvas.com, without consent of the Plaintiff.

61. Defendants' used, and continue to use, the mark "UNIVERSAL CANVAS" in commerce, in connection with the advertising, offering for sale, distribution, and sale of its goods and services.

62. Defendants' use of "UNIVERSAL CANVAS" is a reproduction, counterfeit, or colorable imitation of Plaintiff's mark in connection with Defendants' goods and services.

63. Defendants' use has caused confusion and deception, and is likely to continue to cause confusion, or to cause mistake, or to deceive the public, in violation of the Lanham Act 15 U.S.C. § 1114.

64. Defendants' violation of the Lanham Act 15 U.S.C. § 1114 makes Defendants liable to Plaintiff in civil action.

<u>Count II: Cyberpiracy</u>

15 U.S.C. § 1125(d)

65. Defendants' actions of acquiring, registering, and using "UNIVERSAL CANVAS" domain name was made in bad faith and with the intent to profit.

66. At the time of Defendants' actions, Plaintiff's mark was distinctive and being used in commerce.

67. The Defendants' domain name is confusingly similar to Plaintiff's domain name and registered "UNIVERSAL CANVAS" mark and seeks to capitalize on the distinctiveness and goodwill of Plaintiff's reputation.

<u>Count III: Unfair Competition</u>

15 U.S.C. § 1125(a)

68. In connection with Defendants' goods and services, Defendant uses the mark "UNIVERSAL CANVAS" in commerce, in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods and services.

69. Defendants' words, terms, names, symbols, and devices are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association with Plaintiff and Plaintiff's "UNIVERSAL CANVAS" goods and services, and as to the origin, sponsorship, or approval of their goods and services by Plaintiff.

## COUNT IV: Common Law Trademark Infringement

## 15 U.S.C § 1125 (a)

70. Plaintiff owns the common law trademark rights to "UNIVERSAL CANVAS" trademark.

71. Defendants' used the "UNIVERSAL CANVAS" mark in its registered domain name without consent of the Plaintiff.

72. Defendants' used, and continue to use, the mark "UNIVERSAL CANVAS" in commerce, in connection with the advertising, offering for sale, distribution, and sale of its goods and services.

73. Defendants' use of "UNIVERSAL CANVAS" is a reproduction, counterfeit, or colorable imitation of Plaintiff's mark in connection with Defendants goods and services.

74. Defendants' use is likely to cause confusion, or to cause mistake, or to deceive the public, in violation of the Lanham Act 15 U.S.C. § 1125(a).

75. Defendants' violation of the Lanham Act 15 U.S.C. § 1125 makes Defendants liable to Plaintiff in civil action.

## Count V: Illinois Unfair Competition

## 765 ILCS 1036/60(a)

76. As a result of their unauthorized use, Defendants' use is likely to cause confusion or mistake or to deceive the public, in violation of the common law of the State of Illinois, as to the source of origin of such services.

77. Defendants' are likely to mislead and to continue to mislead prospective consumers as to an affiliation, connection, or association of Defendant or Defendant's services.

## Count VI: Illinois Deceptive Trade Practices

### 815 ILCS 510/3

78. Defendants' caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of their services.

79. Defendants' disparaged the services and business of the Plaintiff by false or misleading representation of fact.

## Count VII: Tortious Interference with Prospective Business Relationships

80. Defendants' improperly and tortiously interfered with Plaintiff's prospective business relationships through diversion of web traffic and misappropriation of Plaintiff's "UNIVERSAL CANVAS" mark.

81. Plaintiff has a reasonable expectation of a business relationship with consumers nationwide, and in particular, within Illinois.

82. Defendants' had full knowledge of Plaintiff's reasonable expectations of prospective business relationships.

83. Defendants' purposefully interfered in Plaintiff's expectation of business relationships through its diversion of web traffic through the universalcanvas.com domain, and by holding itself out as a source of goods and services utilizing the "UNIVERSAL CANVAS" mark.

84. Plaintiff has been injured, both financially and reputationally, by Defendant's interference with its reasonable prospective business relationships.

## Prayer for Relief

85. On Count I of Infringement of Registered Mark, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against

TireSocks, Inc. for a sum to be determined at trial plus court costs, and for such other and further relief as the court deems just and proper in the premises.

86. On Count II of Cyberpiracy, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for a sum to be determined at trial plus court costs, and for such other and further relief as the court deems just and proper in the premises.

87. On Count III of Unfair Competition, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for a sum to be determined at trial, plus court costs, and for such other and further relief as the court deems just and proper in the premises.

88. On Count IV of Common Law Trademark Infringement, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for injunctive relief, a sum to be determined at trial, plus court costs, and for such other and further relief as the court deems just and proper in the premises.

89. On Count V of Illinois Unfair Competition, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for a sum to be determined at trial, plus court costs, and for such other and further relief as the court deems just and proper in the premises.

90. On Count VI of Illinois Deceptive Trade Practices, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for a sum to be determined at trial, plus court costs, and for such other and further relief as the court deems just and proper in the premises.

91. On Count VII of Tortious Interference with Prospective Business Relationships, Tireboots by Universal Canvas, Inc. respectfully requests this Honorable Court to enter Judgment in its favor and against TireSocks, Inc. for a sum to be determined at trial, plus court costs, and for such other and further relief as the court deems just and proper in the premises.

92. Plaintiff prays to recover Defendants' profits, any damages sustained by the Plaintiff, and costs of the action for Defendants' infringing uses.

93. Plaintiff prays for injunctive relief of Defendants' infringing uses.

94. Plaintiff prays for a transfer of rights and ownership in Defendants' infringing domains.

95. Plaintiff prays to recover up to treble damages due to Defendants' intentionally counterfeit domain names, and attorney's fees for Defendants' willful and fraudulent acts.

96. Plaintiff prays to recover statutory damages for each type of Defendants' counterfeit domain names.

97. Plaintiff also prays for any other relief that this Court finds appropriate to protect and remedy the Plaintiff's rights.

## Jury Demand

98. Plaintiff demands a trial by jury on all matters and issues triable by jury in this action.

Respectfully Submitted on 14 December 2020.

Genna S. Hibbs (IL Bar No. 6306165)
Hibbs Law, LLC
224 W Judd St, #8,
Woodstock, IL 60098
gh@hibbslaw.com
Phone: 773-888-2134
Attorney for Plaintiff

## Certification of Service

I, Genna S. Hibbs, certify that on 14 December 2020, I served this Complaint by sending a copy to Defendant TireSocks, Inc., TireSocks International, Inc., Jarrett Gordon, and individual, and their legal counsel by electronic mail:

TireSocks, Inc.
8640 S. Peoria St.
Suite 200
Englewood, CO 80112
720.323.0208
info@tiresocks.com

TireSocks International, Inc.
8640 S. Peoria St.
Suite 200
Englewood, CO 80112
720.323.0208
info@tiresocks.com

Jarrett Gordon
8640 S. Peoria St.
Suite 200
Englewood, CO 80112
720.323.0208
info@tiresocks.com

Ellen Reilly
Reilly Intellectual Property Law Firm
1888 N. Sherman St.
Suite 200
Denver, CO 80203
303.839.8700
reilly@iplawdenver.com

*[signature]*
Genna S. Hibbs
Attorney for the Plaintiff