UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Tireboots by Universal Canvas, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Tiresocks, Inc., et al., <br><br> Defendants. | Case No. 20-cv-7404 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tireboots by Universal Canvas, Inc., a family-owned business, sues its competitors Defendants Tiresocks, Inc. and Tiresocks International, Inc., claiming that Defendants have intentionally misdirected customers searching for Plaintiff's website to Defendants' own website. This intentional misdirection, according to Plaintiff, violates the federal Lanham Act and Illinois law. The Defendants have moved to dismiss the claims based upon two affirmative defenses: the statute of limitations and laches. [60]. For the reasons explained above, this Court denies Defendants' motion.

**I. Background**

This Court accepts as true the following factual allegations from the complaint [1]. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021).

Plaintiff Tireboots by Universal Canvas, Inc. operates a family-owned business in Illinois. [32] ¶ 1. In 2003, Plaintiff established itself as "Universal Canvas, Inc." and has used the mark "Universal Canvas" continuously since that date. *Id.* ¶ 2.

1

Plaintiff specializes in manufacturing and selling equipment covers under product brands like Tireboots, Aerial Lift Diapers, and Control Box Covers. *Id.* ¶ 6. Customers use the covers on mobile construction equipment and aerial mechanical, electrical, and hydraulic lifts. *Id.*

Defendants Tiresocks, Inc. and Tiresocks International, Inc. are Colorado corporations. *Id.* ¶¶ 9–10. Tiresocks, Inc. owned the trade name "Tiresocks" from January 1, 2005 to February 1, 2008. *Id.* ¶ 11. Jarrett Gordan—who goes by Michael—owns and serves as the CEO for both Defendants and owns the trade name registration for "Tiresocks." *Id.* ¶ 12. As Plaintiff's direct competitors, Defendants also produce and sell covers for indoor commercial and construction equipment. *Id.* ¶ 14. Plaintiff alleges, on information and belief, that Defendants have been aware of Plaintiff and its products since late 2003 or early 2004. *Id.* ¶ 66.

Plaintiff "was not a sophisticated computer user," and as such, primarily promoted its products in person, at trade shows, on the phone, and through word of mouth. *Id.* ¶ 67. In 2006, Plaintiff decided to "get a website." *Id.* ¶ 68. When it attempted to register its first "Universal Canvas" domain, however, it discovered that the domain name "universalcanvas.com" was already registered to another unaffiliated party. *Id.* ¶ 69. Plaintiff consequently registered the domain name "universalcanvasinc.com."

Plaintiff claims, on information and belief, that around January 2011, Defendants began redirecting "universalcanvas.com" to its own domain, "tiresocks.com," for the sole purpose of misrepresenting themselves as Universal

Canvas to capture Plaintiff's customers. *Id.* ¶ 70. Plaintiff only learned that Defendants were redirecting web traffic in May 2016. *Id.* ¶ 72. Plaintiff asserts on information and belief that it saw a "significant dip" in sales when Defendants began redirecting website traffic, and that the dip continued until it changed its name from Universal Canvas, Inc. to Tireboots by Universal Canvas, Inc. in 2016. *Id.* ¶¶ 81–82. Plaintiff claims, again on information and belief, that Defendants ceased redirecting internet traffic from the "universalcanvas.com" domain around August 2020. *Id.* ¶ 85.

Plaintiff brought suit in this Court on December 14, 2020. [1]. In its amended complaint, Plaintiff asserts claims against Defendants for: trademark infringement under the Lanham Act (Count I); cyberpiracy in violation of the Anti-cybersquatting Consumer Protection Act (ACPA) (Count II); unfair competition under the Lanham Act (Count III); false designation of origin, palming off, and false advertising under the Lanham Act (Count IV); "common law" trademark and trade dress infringement under the Lanham Act (Count V); Illinois unfair competition (Count VI); Illinois deceptive trade practices (Count VII); tortious interference with prospective business relationships (Count VIII); and Illinois common law unjust enrichment (Count IX).

Defendants have moved to dismiss Plaintiff's amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). [60].

**II. Legal Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion

to dismiss under Rule 12(b)(6), "the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). A plaintiff need not plead "detailed factual allegations," but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek*, 8 F.4th at 586–87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

### III. Analysis

Defendants move to dismiss, arguing that Plaintiff's claims are all barred by applicable statutes of limitation and by the equitable defense of laches. [61].

#### A. Statute of Limitations

Defendants argue that a three-year statute of limitations time-bars all of Plaintiff's claims because Plaintiff discovered that Defendants redirected website traffic in 2016 but did not bring suit until December 2020, more than three years after discovering the alleged wrong. Because a statute of limitations defense is an affirmative defense, courts only grant a motion to dismiss based upon a failure to comply with the statute of limitations "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019) (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014)).

Plaintiff brings Counts I through V under the federal Lanham Act.[1] The Lanham Act does not provide its own statute of limitations but instead incorporates the analogous state statute of limitations. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). Courts in this district apply the Illinois Consumer Fraud and Deceptive Business Practices Act's three-year statute of limitations to Lanham Act claims. *Catilina Nominees Proprietary Ltd. v. Stericycle, Inc.*, No. 15-CV-10734, 2021 WL 1165087, at *3 (N.D. Ill. Mar. 26, 2021); *Billy Goat IP LLC v. Billy Goat*

---

[1] Congress passed the ACPA in 1999 as an amendment to the Lanham Act. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 549 (9th Cir. 2013); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. 2004); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916 (N.D. Ill. 2007).

*Chip Co. LLC*, No. 17-CV-9154, 2018 WL 3740542, at *4 (N.D. Ill. Aug. 7, 2018); *RGB Plastic, LLC v. First Pack, LLC*, 184 F. Supp. 3d 649, 672 (N.D. Ill. 2016); *Champion Labs., Inc. v. Cent. Ill. Mfg. Co.*, 157 F. Supp. 3d 759, 764 (N.D. Ill. 2016). This three-year statute of limitations also applies to Plaintiff's claim in Count VII for violations of the Illinois Deceptive Trade Practices Act and to Plaintiff's claim in Count VI for Illinois unfair competition. *See Champion Labs.*, 157 F. Supp. 3d at 764; *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2013 WL 6632741, at *3 (N.D. Ill. Dec. 16, 2013).

Defendants argue that the three-year statute of limitations time-bars Counts I–VII because Plaintiff alleges it knew of Defendants' use of the "universalcanvas.com" domain since May 2016 and did not bring suit until December 2020, more than four years after it found out about Defendants' conduct. [61] at 5; *see* [32] ¶ 72; *see also S & A Futures, LLC--Series 2 v. Sysco Chi., Inc.*, No. 11 C 7629, 2012 WL 851556, at *3 (N.D. Ill. Mar. 13, 2012) (noting that Illinois statutes of limitation begin to run when the injured party knows or should have known of his injury).

Plaintiff counters its claims are timely under the continuing violation doctrine because Defendants' conduct constituted a series of wrongs that continued until 2020. [63] at 3–6. The continuing violation doctrine posits that when a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious act cease. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Courts have applied the doctrine to Lanham Act claims and to

6

corollary state-law claims for unfair competition and deceptive trade practices. *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *5 (N.D. Ill. Sept. 22, 2014) (noting that the "notion of a continuing wrong" applies to Lanham Act claims) (quoting *Hot Wax*, 191 F.3d at 821); *Second Chance Body Armor, Inc. v. Am. Body Armor & Equip.*, No. 94 C 6178, 1999 WL 608718, at *7 (N.D. Ill. Aug. 6, 1999) (applying the continuing violation doctrine to state-law consumer protection claims); *Sarkis' Café*, 2013 WL 6632741, at *4 (applying the continuing violation doctrine to the plaintiff's state-law claims for unfair competition and deceptive trade practices for the same reasons as the Lanham Act claims).

At the pleadings stage, the amended complaint plausibly implicates the continuing violation doctrine because Plaintiff alleges that Defendants' unlawful conduct—the redirection of website traffic giving rise to the Lanham Act, unfair competition, and deceptive trade practices claims—continued in a repetitive fashion until May 2020. [32] ¶ 85; *see, e.g.*, *Sarkis' Café*, 2013 WL 6632741, at *4 (applying the continuing violation doctrine because the plaintiff alleged that the defendant was continuing to infringe upon the plaintiff's trademarks "and violating the Lanham Act").

Defendants rely heavily upon an unpublished Illinois appellate court decision, *Hullverson & Hullverson, L.C. v. Hullverson*, 2016 IL App (5th) 150226-U, ¶ 79, where the court declined to apply the continuing violation doctrine to allegations of cyberpiracy under the ACPA. There, the plaintiff alleged that the defendants illegally directed website traffic away from its website to the defendants' website. *Id.*

7

¶ 79. According to the complaint, the last of those redirections took place in August 2006 and the plaintiff discovered that last act in May 2008, nearly two years later. *Id.* The clock thus began running on the plaintiff's claim on May 30, 2008, when the plaintiff discovered the last act of the defendant's redirection. *Id.* ¶ 79. Based upon the allegations, the court held that the plaintiff's claim—which it brought in December 12, 2013—was clearly time-barred because the plaintiff did not allege "any actions on the part of the defendants on or after December 12, 2010." *Id.* ¶¶ 7, 79. Instead, the plaintiff alleged only a continuing *injury* extending into the limitations period, and the "continuing nature of [an] injury" does not suffice to invoke the continuing violation doctrine. *Id.* ¶¶ 78–79.

Defendants liken this case to *Hullverson*, arguing that all Plaintiff has alleged is a continuing injury within the applicable statute of limitations period. [61] at 8. But this case is not *Hullverson*. The *Hullverson* court rejected applying the continuing violation doctrine because the *last* act of website diversion occurred in 2006 (well outside the applicable limitations period), and the continuing violation doctrine requires at least one act occurring *within* the limitations period. Here, in contrast, Plaintiff has alleged that Defendant continued to take acts of redirection until May 2020—well within the statutory period. [32] ¶ 87.

The timeliness analysis is different for Counts VIII (tortious interference) and IX (unjust enrichment). Illinois' five-year statute of limitations applies to tortious interference and unjust enrichment claims. 735 Ill. Comp. Stat. Ann. 5/13-205; *see Troya Int'l, Ltd. v. Bird-X, Inc.*, No. 15 C 9785, 2017 WL 6059804, at *7 (N.D. Ill. Dec.

8

7, 2017) (tortious interference); *Blanchard & Assocs. v. Lupin Pharms., Inc.*, 900 F.3d 917, 922 (7th Cir. 2018) (unjust enrichment). Defendants do not claim that the five-year statute of limitations would time-bar Plaintiff's claims for tortious interference and unjust enrichment. Instead, Defendants urge this Court to apply a shorter three-year statute of limitations period, because the claims "arise from the same injury as the Lanham Act" claims. [61] at 6. Defendants cite to an Illinois Supreme Court case stating that the "determination of the applicable statute of limitations is governed by the type of injury at issue, irrespective of the pleader's designation of the nature of the action." *Armstrong v. Guigler*, 673 N.E.2d 290, 293 (Ill. 1996). In *Armstrong*, the plaintiff-vendors sued their real estate brokers for failing to disclose material facts regarding sale of their property and for failing to act with loyalty and fidelity. *Id.* at 292. The court observed that, although the plaintiffs sued under a breach of contract theory (presumably to take advantage of a ten-year statute of limitations period), the complaint sought damages for a general duty to disclose all material information, not for damages flowing from the defendants' failure to perform a contractual duty. *Id.* at 292–93. Thus, as the court explained, the "cause of action filed by plaintiffs is independent of and only incidental to the written contract." *Id.* at 296. Based upon this reasoning, the court held that the shorter, five-year limitations period for breach of fiduciary duty claims applied. *Id.* at 296–97.

Unlike the plaintiff in *Armstrong,* Plaintiff has not mislabeled a cause of action in order to take advantage of a more generous limitations period. In its tortious interference count, Plaintiff alleges financial and reputation injury through

9

Defendants' destruction of Plaintiff's business relationships. [32] ¶¶ 141–42. And since an unjust enrichment claim "focuses on the benefit received and retained" by the defendant to the plaintiff's detriment, *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004); *see also Stefanski v. City of Chicago*, 28 N.E.3d 967, 980 (Ill. App. Ct. 2015), Plaintiff's unjust enrichment claim focuses correctly on the allegation that Plaintiff has been detrimentally impacted by Defendant's actions and claims that value of Defendants' ill-gotten gains. [32] ¶ 146. Unlike in *Armstrong*, the allegations underlying the claims are not merely incidental to the labeled causes of action. Therefore, this Court declines to apply the shorter three-year statute of limitations period to these claims.

For the reasons stated above, this Court declines to dismiss the complaint based upon Defendants' statute of limitations affirmative defense.

**B. Laches**

Defendants also argue that the doctrine of laches bars Plaintiff's Lanham Act claims. [61] at 8–10. Laches constitutes an equitable remedy allowing this Court to "cut off the right to sue when the plaintiff waited too long before bringing suit." *Champion Labs.*, 157 F. Supp. 3d at 766. To establish laches as an affirmative defense, Defendants must show both: (1) unreasonable lack of diligence by Plaintiff; and (2) prejudice arising therefrom. *Id.* (citing *Hot Wax*, 191 F.3d at 820).

Courts have routinely denied motions to dismiss based upon a laches defense because the application of laches typically involves a fact-intensive inquiry requiring a full factual record. *See id.*; *see also Next Level Sportsystems v. YS Garments, LLC*,

10

No. 20 C 252, 2020 WL 7771140, at *3 (N.D. Ill. Dec. 30, 2020) (denying a motion to dismiss asserting a laches defense because the court "has no facts before it at this stage to determine whether the delays that have occurred in this case caused [the defendant] to suffer prejudice"); *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916–17 (N.D. Ill. 2007) ("The defense of laches generally requires a fact-intensive inquiry . . . it is usually not amenable to being resolved on summary judgment, let alone on a motion to dismiss") (internal quotation marks and citation omitted). So too, here. Without a full factual record, this Court finds it premature to assess whether Plaintiff unreasonably delayed or Defendants were unduly prejudiced by such delay. This Court therefore denies Defendants' motion to the extent based upon their laches defense.

## IV. Conclusion

For the reasons stated above, the Court denies Defendants' motion to dismiss. [60]. Defendants' request for attorney fees is also denied. [61] at 13. Defendants are ordered to answer the complaint by December 22, 2021.

E N T E R:

Dated: December 8, 2021

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge

11