UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIREBOOTS BY UNIVERSAL CANVAS, INC., | ) ) ) No. 20 CV 7404 |
| Plaintiff, | ) ) ) |
| v. | ) ) Magistrate Judge Young B. Kim ) |
| TIRESOCKS, INC., TIRESOCKS INTERNATIONAL, INC., | ) ) ) ) June 28, 2022 |
| Defendants. | ) ) |

**MEMORANDUM OPINION and ORDER**

Before the court is Plaintiff's motion to compel a forensic examination of Defendants Tiresocks, Inc.'s and Tiresocks International Inc.'s electronically stored information ("ESI") under Federal Rule of Civil Procedure 34(a)(2). Plaintiff initially submitted a request to inspect all of Defendants' digital data and analytics tools related to their online business. Defendants objected to Plaintiff's request as overly broad and unduly burdensome. Plaintiff now moves to compel Defendants to permit Plaintiff's IT expert to perform a forensic inspection. For the following reasons, the motion is denied:

**Background**

Plaintiff is a manufacturer and seller of equipment covers for various types of construction equipment, including aerial, mechanical, electrical, and hydraulic lifts. (R. 32, Amend. Compl. ¶ 6.) Like Plaintiff, Defendants manufacture and sell commercial and construction equipment covers, and as such the parties are direct

competitors. (Id. ¶¶ 9, 14.) In 2006, Plaintiff sought to create a website to market and sell its products under the domain "universalcanvas.com." (Id. ¶¶ 68-69.) But when Plaintiff attempted to register this domain name, Plaintiff discovered that another entity had already done so. (Id.) As a result, Plaintiff registered "universalcanvasinc.com" as its domain instead. (Id.) The parties agree that in 2011, Defendants began redirecting customers visiting "universalcanvas.com" to Defendants' other website, "tiresocks.com." (Id. ¶ 70; R. 86, Ans. ¶ 70.) However, Plaintiff says it did not learn of this redirection until five years later. (R. 32, Amend. Compl. ¶ 72.)

Plaintiff filed this suit in December 2020 alleging that Defendants committed: (1) trademark and trade dress infringement, unfair competition, false designation of origin, palming off, and false advertising under the Lanham Act; (2) cyberpiracy under the Anti-cybersquatting Consumer Protection Act ("ACPA"); and (3) unfair competition, deceptive trade practices, and tortious interference with prospective business relationships under Illinois law. (R. 1, Compl.; R. 32, Amend. Compl.) Plaintiff further alleges that Defendants misrepresented themselves to potential customers as Universal Canvas to capture Plaintiff's customers, thereby harming Plaintiff's sales. (R. 32, Amend. Compl. ¶¶ 70, 82.) Defendants assert six affirmative defenses in response, alleging that one or more of Plaintiff's claims are barred by the statute of limitations, laches, estoppel, acquiescence, waiver, and unclean hands. (R. 86, Ans. at 40-43.)

During discovery Plaintiff asked to perform a forensic inspection of "all digital data and analytical tools related to Defendants' business presence online (i.e., websites, social media, domain, etc.)." (Pl.'s Request for Inspection ("RFI") No. 1.) Defendants objected to this request as overly broad and unduly burdensome, as well as falling outside the permissible scope of discovery. (Defs.' Resp. to RFI No. 1.)

## Analysis

Federal Rule of Civil Procedure 37 allows a party to move to compel the production of requested discovery materials. This court has "broad discretion" in reviewing such a motion, *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08 CV 693, 2009 WL 3347101, at *1 (E.D. Wis. Oct. 15, 2009), and "should independently determine the proper course of discovery based on the arguments of the parties," *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

Federal Rule of Civil Procedure 34 governs the production of ESI in discovery. But while Rule 34(a) allows a party to request the production of ESI, it "does not grant unrestricted, direct access to a respondent's database compilations." *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003); *see also* Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment (noting that Rule 34(a) "is not meant to create a routine right of direct access to a party's electronic information system" and cautioning courts to "guard against undue intrusiveness resulting from inspecting or testing such systems"). Such direct access would "expand the expense and burden of [the] case" at bar, *Diepenhorst v. City of Battle Creek*, No. 1:05 CV

3

734, 2006 WL 1851243, at *4 (W.D. Mich. June 30, 2006), and is typically only permitted where there has been a showing of noncompliance with discovery rules, *In re Ford Motor Co.*, 345 F.3d at 1317. As with all discovery materials, the discovery sought must also be both relevant *and* proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) (emphasis added). To this end, any testing and sampling of ESI to determine relevance and proportionality under Rule 34 is "not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances." Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.

Furthermore, forensic examinations are an "extraordinary remedy." *Belcastro v. United Airlines, Inc.*, No. 17 CV 1682, 2019 WL 7049914, at *2 (N.D. Ill. Dec. 23, 2019); *Alight Sols. v. Thomson*, No. 20 CV 3043, 2021 WL 5119111 at *6 (N.D. Ill. Nov. 3, 2021). Courts are especially reluctant to permit direct inspection of ESI when the request is not proportional to the needs of the case, *Motorola Sols., Inc. v. Hytera Commc'ns. Corp*, 365 F. Supp. 3d 916, 925 (N.D. Ill. 2019), is unduly burdensome, *id.* at 924, or the information sought does not go to the heart of the matter, *Hespe v. City of Chi.*, No. 13 CV 7998, 2016 WL 7240754, at *5 (N.D. Ill. Dec. 15, 2016); *see Balboa Threadworks, Inc. v. Stucky*, No. 05 CV 1157, 2006 WL 763668, at *3 (D. Kan. March 2, 2006) ("Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit is unduly vague."). Courts also "guard against undue intrusiveness" based on ESI requests.

4

*Hansen v. Country Mut. Ins. Co.*, No. 18 CV 244, 2020 WL 5763588, at *3 (N.D. Ill. Sept. 28, 2020). Parties can mitigate this concern by employing less intrusive discovery methods before resorting to more invasive measures. *John B. v. Goetz*, 531 F.3d 448, 461 (6th Cir. 2008). Finally, courts generally deny ESI requests when they would place an undue burden on the respondent. *Motorola Sols.*, 365 F. Supp. 3d at 924.

Accordingly, the court must conduct a fact-intensive inquiry, considering the specific allegations and circumstances of the case, *see Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002), and taking into account: (1) the relevance of the requested information as it pertains to the heart of the case; (2) the invasiveness of the RFI, and in particular whether Plaintiff has exhausted other less intrusive means of collecting the same information; and (3) the burden the RFI places on Defendants, *see Motorola Sols.*, 365 F. Supp. 3d at 924-25; *Hespe*, 2016 WL 7240754, at *5; *Hansen*, 2020 WL 5763588, at *3.

With respect to relevance, Plaintiff's RFI casts too wide a net. In determining whether ESI sought in discovery goes to the heart of the case, courts have considered whether "the connection between the computers and the claims in the lawsuit is unduly vague." *Balboa*, 2006 WL 763668, at *3; *see also Hespe*, 2016 WL 7240754, at *5. Plaintiff argues that a forensic examination would retrieve "highly relevant" evidence of Defendants' infringement, false advertising, false designation or origin, and cybersquatting, as well as information needed to prove damages. (R. 113, Pl.'s Mot. at 21-22.) But the connection between all of

5

Defendants' electronic data and Plaintiff's claims is tenuous at best. Although the court recognizes the significance of the evidence Plaintiff hopes to retrieve, Defendants' ESI includes a substantial volume of information that does *not* go to the heart of this case.

As for invasiveness, there is no dispute that Plaintiff has failed to exhaust other methods of collecting the information it seeks. Plaintiff nonetheless asserts that ordinary discovery methods are insufficient to secure the requested data. (Id. at 20.) For example, Plaintiff contends that a request for production would not "capture the relevant traffic and website data" needed to determine Plaintiff's lost revenue from Defendants' redirection, and that sifting through "personalized filters and settings" of a Google Analytics file or other individualized data platform would be "unduly burdensome and inefficient." (Id.) But without having attempted to obtain this information through less intrusive data platforms or discovery methods, Plaintiff's assertions are unsubstantiated. Courts have advised movants in similar scenarios that "less intrusive means . . . should be employed before resorting to inherently intrusive measures." *Goetz*, 531 F.3d at 461. This court agrees. Plaintiff must pursue the least intrusive means of obtaining the relevant data before requesting a forensic exam.

Plaintiff's request for a forensic examination would also impose too great a burden on Defendants. Defendants express concerns about giving Plaintiff unfettered access to their confidential business information, noting that Plaintiff previously mishandled Defendants' confidential material related to settlement

6

discussions. (R. 118, Defs.' Resp. at 15; see also R. 113, Pl.'s Mot. at 23.) Plaintiff assures the court that "the risk of harm to Defendants in having their web-traffic and marketing platforms inspected is very low" because Plaintiff would only access unprivileged, business-related platforms that are unrelated to legal matters or personal information. (R. 113, Pl.'s Mot. at 22.) Plaintiff also notes that Defendants could designate certain ESI as "Confidential" or "Highly Confidential" pursuant to the Confidentiality Order in this case. (Id.; see R. 101, Confidentiality Order.) While these safeguards may protect Defendants' confidential information, they do not negate the fact that Plaintiff has framed its underlying discovery request too broadly. Plaintiff could have pursued other less burdensome discovery means that would have protected Defendants' confidentiality interests more effectively.

In sum, Plaintiff's request is not proportional to the needs of the case because a forensic examination would necessarily involve the examination and collection of more information than is required to support Plaintiff's claims. Simply put, "[t]he discovery rules are not a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Motorola Sols.*, 365 F. Supp. 3d at 925. And this court has previously ruled that discovery requests covering the entire scope of Defendants' business operations are unduly broad. (See R. 112 (denying Plaintiff's request for production of documents that would cover "the entire scope of Defendants' business operations").) Yet that is precisely what Plaintiff seeks to do here.

7

Nevertheless, Plaintiff asserts that a forensic examination is necessary because Defendants lack the expertise to search and retrieve the relevant data on their own. (R. 113, Pl.'s Mot. at 24.) Under the *Belcastro* standard,[1] there are two circumstances in which a forensic examination may be warranted: (1) when the responding party has intentionally concealed the information; or (2) when the responding party lacks the expertise to search and retrieve the relevant data. *Belcastro*, 2019 WL 7049914, at *2. Plaintiff's motion focuses on the second factor. (R. 113, Pl.'s Mot. at 24.) First, Plaintiff alleges that Defendants' designated expert lacks expertise because he is not publicly listed in the online expert witness database. (Id.) Second, Plaintiff claims Defendants' expert produced flawed reports that used search filters to yield results in Defendants' favor. (Id.)

Neither argument is persuasive. Plaintiff's first point is weak because Defendants claim they have not even named the cited individual as an expert in this case. (R. 118, Defs.' Resp. at 15.) Even if they had, the absence of the potential expert's name from a database alone does not prove his inability to perform Defendants' inspection. And Plaintiff's second point is conclusory, lacking any details on the alleged flaw in Defendants' search protocol. Indeed, Plaintiff claims that Defendants' expert manipulated search results but provides no corroboration for this claim. (R. 113, Pl.'s Mot. at 24.) Additionally, and as discussed, there is no indication that Plaintiff tried to retrieve the requested information through less

---

[1] Plaintiff references this standard in its motion as the *Alight* standard. (R. 113, Pl.'s Mot. at 23.) But as *Alight* pulled this standard from *Belcastro*, the court refers to it as the *Belcastro* standard. *See Belcastro*, 2019 WL 7049914, at *2.

intrusive discovery means. Therefore, Plaintiff cannot claim that Defendants lack the expertise to produce responsive discovery materials when Plaintiff never even submitted a discovery request seeking such materials. Finally, Plaintiff's allegations rest on confidential materials Defendants disclosed during settlement discussions between the parties. (R. 118, Defs.' Resp. at 15.) This type of Rule 408 materials should only be used for purposes of discussing settlement. Because Plaintiff fails to show that Defendants lack the expertise to search and retrieve their own data, the court sees no reason to permit a forensic examination at this stage in the litigation.

## Conclusion

For the foregoing reasons, Plaintiff's motion to compel is denied.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

9